JAMES *v.* SWEET.

MALICIOUS PROSECUTION—EVIDENCE—MALICE.

*1. In an action for a malicious prosecution, the fact that the city attorney advised that the ordinance under which plaintiff was arrested was void is not evidence of malice.

2. Citizens and city officers are justified in taking proceedings in the courts to test the validity of an ordinance, and are not subject to an action for malicious prosecution, if they did not act maliciously or oppressively.

3. Plaintiff was not put under any restraint by the officer until after conviction. He was urged to appeal his case before commitment, and avoid confinement, but by the advice of his attorney went to jail, and remained overnight, where he was

---

*Head-notes by GRANT, J.

not treated as a prisoner, but was provided with a good room and bed, and ate his meals with the sheriff. *Held,* that the court properly directed a verdict for the defendants.

Error to Washtenaw; Kinne, J. Submitted April 4, 1900. Decided November 13, 1900.

Case by Luther L. James against Zenas Sweet and others for malicious prosecution. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

Plaintiff sued the defendants in an action for malicious prosecution. The court directed a verdict for the defendants. Section 88, subd. 23, of the charter of the city of Ann Arbor ( Act No. 331, Local Acts 1889, as amended by Act No. 336, Local Acts 1895 ), confers upon the common council certain powers, among which is the power to license and regulate—

"Auctioneers, peddlers, pawnbrokers, junk dealers, dealers in second-hand goods and merchandise, and transient tradesmen, auctions, peddling, pawnbrokerage, taverns, hotels, victualing houses, restaurants, saloons, [or other houses for furnishing meals, food, or drink, and keepers of billiard tables and ball alleys not used for gaming. Whoever occupies any premises within the city of Ann Arbor for a temporary period only, and is not assessed for taxes in said city, and who offers for sale goods, wares, or merchandise, is hereby defined and declared to be a transient tradesman."

Under this authority the common council enacted the following ordinance:

"SECTION 1. No person or persons, firm or corporation, shall ply the vocation of transient trader in the city of Ann Arbor without first obtaining a license as herein provided.

"SEC. 2. A transient trader, as used in this ordinance, shall be construed to mean a person, by himself or in company with others, who occupies premises within the city for a temporary period, and is not assessed for taxes in the city, and who offers goods, wares, or merchandise for sale.

"SEC. 3. Before any license shall be granted under this ordinance, the person or persons, firm or corporation, de-siring the same shall make application to the common council in writing, specifying the kind of business the applicant proposes to engage in, the time it is to be carried on, and the place where such goods are to be sold, and shall, at the time of making such application, deposit with the city clerk of said city the amount of the license fee required by this ordinance.

"SEC. 4. The license fee required by this ordinance shall be as follows: For the right and privilege of selling goods at retail by sample, ten dollars ($10.00) per day for the first ten days, and five dollars ($5.00) per day for each and every day in addition thereto. For the right and privilege of selling goods from a stock actually kept on hand, from which selections are made by the purchaser, ten dollars ($10.00) per day for the first twenty days, and three dollars ($3.00) for each and every day in addition thereto.

"SEC. 5. Nothing in this ordinance shall be construed to prohibit the sale of goods, wares, or merchandise to local merchants and dealers who are already engaged in or about to engage in business in said city of Ann Arbor.

"SEC. 6. The sum so paid by such party or parties may be remitted by the order of the city council, provided it is shown that the party or parties to whom such license has been issued have become a permanent resident of this city, and that the stock of goods owned and controlled by them has become subject to assessment and has been wholly assessed by the city assessor of the city of Ann Arbor, and that the taxes thereon have been paid.

"SEC. 7. Any person violating any of the foregoing provisions of this ordinance shall, on conviction thereof, be punished by a fine not to exceed one hundred dollars, or imprisonment in the city lockup or the Washtenaw county jail not to exceed ninety days, or both fine and imprisonment, in the discretion of the court."

Plaintiff was arrested under this ordinance upon complaint of defendant Sweet, who was the city marshal; was tried in a justice's court by a jury, found guilty, appealed his case to the circuit court, and was there acquitted under the instruction of the circuit judge, who held the ordinance void. Plaintiff and his copartners were transient traders within the meaning of the charter and ordi-

nance. They made no defense upon the facts. For the purpose of this case, therefore, the question of whether they were "transient traders" is eliminated by a verdict of the jury. The record does not show what reasons were given by the circuit judge in directing the verdict. The declaration contains counts for false imprisonment and malicious prosecution. Counsel for plaintiff in this court insist only upon the count for malicious prosecution, as that is the only question they have argued.

*Arthur Brown* and *O. E. Butterfield* (*John F. Lawrence*, of counsel), for appellant.

*A. J. Sawyer & Son* (*Cavanaugh & Wedemeyer*, of counsel), for appellees.

GRANT, J. (*after stating the facts*). We affirm the direction of the court. There was no dispute as to the facts, the defendants putting in no testimony.

1. This ordinance had been in force for some time. Some persons had paid the license fees required, and complaints had been made against others. Mr. Sweet made the complaint after consultation with the mayor, and after plaintiff, the mayor, and Sweet had had one or more conferences about the matter. The mayor informed plaintiff and his partners, who had taken a lease of the store for only two months, that if they paid their license, and afterwards became taxpayers, the money would be refunded, and also suggested that they might give a bond instead of paying the money. Plaintiff was not put under any restraint whatever until after he was convicted. He then, after consultation with, and by the advice of, his attorney, went with the officer to jail about 5 o'clock p. m., where he remained overnight, appealed his case the next morning, and was discharged. At the jail he was not treated like a prisoner, but was provided with a good room and bed, and ate his meals with the sheriff. He was urged to appeal his case before commitment, and thus avoid confinement. After his nominal arrest, Mr. Sweet

applied to the city attorney to prosecute the case. The city attorney declined, giving as his reason that, in his opinion, the ordinance was void, under the case of *City of Saginaw* v. *Saginaw Circuit Judge*, 106 Mich. 32 (63 N. W. 985). He advised Mr. Sweet not to proceed with the prosecution, but to have the case dismissed, unless he obtained a bond of indemnity. The leading business men of the city were anxious to have the ordinance tested, and 19 of them executed to Mr. Sweet a bond for that purpose, drawn by the city attorney. Among them were the defendants Reinhardt, Mack, Goodspeed, and Wagner. Two of the business citizens called upon the city attorney, and he told them that, if some good lawyer in the city would give his opinion that the ordinance was good, he would contribute towards prosecuting it. Mr. A. J. Sawyer, an attorney of experience and ability, was consulted, and gave his advice that the ordinance was good, and that the *Saginaw Case* did not apply. The trial then proceeded. The attorney representing the city asked for a jury trial. Plaintiff was represented by an attorney, and introduced no testimony. The principal defense evidently was the invalidity of the ordinance. The jury was summoned by a constable who was called for that purpose by Mr. Sweet, who told him that this was a business men's suit, and he wanted him to get business men upon the jury.

Counsel for plaintiff claim that there was a conspiracy on the part of the defendants and other business men to prosecute and convict the plaintiff. We need not set forth the testimony. It is sufficient to say that we find no evidence of any conspiracy, or any attempt to deal unfairly or oppressively with the plaintiff. The fact that the city attorney had advised that the ordinance was void was not evidence of malice, or of want of probable cause. Citizens and the city officers were justified in taking proceedings to have the validity of the ordinance determined in the courts, and, so long as they did not act maliciously or oppressively, the law protected them in so doing; other-

wise an attorney might close the courts to the determination of these questions, unless some official was willing to run the risk of a suit for false imprisonment or malicious prosecution. The plaintiff was treated with the utmost consideration by all concerned, and there is no testimony tending to show that these defendants or other citizens acted from malice. *Rogers* v. *Olds*, 117 Mich. 368 (75 N. W. 933); *Tillman* v. *Beard*, 121 Mich. 475 (80 N. W. 248); *Brooks* v. *Mangan*, 86 Mich. 576 (49 N. W. 633, 24 Am. St. Rep. 137).

2. It is unnecessary to discuss the ordinance. It differs from that in the *Saginaw Case* very materially, in that this ordinance applies to residents and nonresidents alike, while the Saginaw ordinance was aimed at nonresidents alone, and for that reason was held void. The reasonableness of the license fee was not decided.

Judgment affirmed.

HOOKER, MOORE, and LONG, JJ., concurred. MONTGOMERY, C. J., took no part in the decision.