CITY OF MUSKEGON *v.* ZEERYP.[1]

1. MUNICIPAL CORPORATIONS—PEDDLERS—LICENSES.

A city charter empowering the council to license those engaged in the business of hawking and peddling (directly or by canvassing for subscriptions) authorizes an ordinance requiring a license for soliciting orders for the subsequent delivery of goods.

2. SAME—EXCESSIVE FEES.

A license fee of $10 for one week and $50 for one year, for hawking and peddling in the streets of the city of Muskegon, is not so excessive as to make the ordinance void.

3. SAME—INTERSTATE COMMERCE.

An ordinance requiring a license fee of a peddler does not restrain interstate commerce, where the peddler, a resident of this State, takes subscriptions for the goods of a corporation of another State, but orders them from a general stock, kept in this State, in sufficient quantities to enable him to fill the subscription orders.[2]

Exceptions before judgment from Muskegon; Russell, J. Submitted April 9, 1903. (Docket No. 11.) Decided July 14, 1903.

James Zeeryp was convicted of peddling without a license. Affirmed.

*W. W. Wicker*, for appellant.

*Alex. Sutherland*, for appellee.

MOORE, J. The respondent was convicted of violating an ordinance of the city of Muskegon. He has brought the case here on exceptions before sentence.

The agreed facts are as follows:

---

[1] Rehearing denied September 22, 1903.
[2] For peddlers as related to interstate commerce, see note to *Re Spain*, (C. C. E. D. N. C.) 14 L. R. A. 97.

"Defendant, James Zeeryp, is a resident of the city of Muskegon, and for the past nine years has been a local agent of the Grand Union Tea Company, a New Jersey corporation, whose headquarters are at Brooklyn, N. Y. When defendant first started in business, he was furnished with a sample case, and went from door to door in said city of Muskegon, soliciting orders for teas, coffees, spices, baking powders, and flavoring extracts and essences, and in time his business grew, and he had regular customers from whom he received orders and delivered goods. At the present time, and for a number of years past, defendant has been furnished by the Grand Union Tea Company with a covered delivery wagon and horse. On this wagon, in large letters, is written, 'Grand Union Tea Company, Tea, Coffee, Baking Powders, and Flavoring Extracts;' the said horse and wagon being the property of the Grand Union Tea Company. His custom is to drive his wagon from door to door in said city, and solicit orders from his regular customers for future delivery, and at the same time deliver goods theretofore ordered. These orders he entered in a book that he carried with him, and the goods were delivered at a subsequent time, and once a week or oftener he sent for enough tea, coffee, spices, baking powder, and flavoring extracts and essences to fill the orders so taken, to the Grand Rapids warehouse of the Grand Union Tea Company, to be filled there. He did not send the names of the persons ordering goods, or the amount each ordered. On receipt of the packages from Grand Rapids, defendant would deliver said tea, coffee, spices, baking powders, and flavoring extracts and essences, and collect the price. The defendant transacted his entire business with the warehouse of the Grand Union Tea Company at Grand Rapids, and was required to account to the Grand Union Tea Company for all goods received by him.

"The Grand Rapids agent of the Tea Company shipped the goods to the defendant, and charged the price thereof to him. Defendant received a commission on all goods ordered and delivered by him. The branch store and warehouse for Western Michigan is in Grand Rapids, and goods were sold at retail at said store, and said branch store paid taxes on said stock in Grand Rapids. The branch warehouse received its goods from Brooklyn, N. Y., in the original packages, for the purpose of filling the orders of subagents, and the original packages of goods

were shipped to Grand Rapids, and there broken and used solely for the foregoing purposes. That it was for soliciting orders, delivering goods so ordered, without a license, as required by the ordinance of the city of Muskegon, in said city, in the manner hereinbefore mentioned, and not otherwise, was complaint herein made and warrant issued.

"That all goods sold and delivered by defendant were goods shipped by said Grand Union Tea Company from its headquarters at Brooklyn, N. Y., consigned to themselves at Grand Rapids, Michigan, and by them kept in their warehouse in Grand Rapids until the original packages were there broken and used for the purposes hereinbefore stated; that said defendant did not own any of the goods for the sale of which he was soliciting orders, but the same were all owned by the said Grand Union Tea Company until the delivery to the respective customers; that defendant has been a resident of the city of Muskegon 10 years and upwards, and now resides at No. 62 Sanford street, and pays taxes on his real estate and personal property to said city. The Grand Union Tea Company does not pay any license or taxes on its horse and wagon, stock, or business in the city of Muskegon, nor does any one in its behalf. Defendant did not have a license, as required by the ordinance of the city of Muskegon, at the time of his arrest and conviction as aforesaid."

The material portions of the ordinance read as follows:

"No person or persons shall engage in the business of hawking, pack or other peddling, in the streets or other public places, or from door to door, or in selling any article of trade or commerce whatsoever from a stand, stall, cart, wagon, pack, basket, or in any manner, or on any of the public streets, parks, grounds, alleys, or places in the city of Muskegon, without first having obtained a license therefor."

"The amount to be paid for the license provided for in this ordinance shall be as follows, viz.: For huckstering, hawking, peddling * * * spices, teas, coffees, baking powders, flavoring extracts and essences, $10.00 for one week and $50.00 for one year; * * * for groceries not herein otherwise enumerated or especially provided for, $2.00 for one week, $5.00 for one month, and $25.00 for one year; * * * for jewelry, watches, clocks, silverware, watch chains and charms, chains, spectacles, eye-

glasses, and optical instruments, $3.00 for one day and $15.00 for one week; * * * for all other articles of trade or commerce not herein enumerated or specially provided for, $1.00 for one day, $3.00 for one week, and $10.00 for one month, and $25.00 for one year: *Provided,* that no license shall be issued for any greater length of time than one year."

Section 5 provides that the ordinance shall not apply to any farmer or gardener selling or offering for sale the product of his own farm or garden.

Section 6 provides:

"Any person or persons who shall go about from house to house or place to place, and sell or offer to sell any article of trade or commerce, to be delivered then or in the future, shall be deemed to be a hawker and peddler, within the meaning of this ordinance."

The city of Muskegon has a special charter, conferring upon the common council, among other things, the following powers:

" In addition to the other powers and duties herein conferred upon it, the council shall have power to enact, make, continue, establish, modify, amend, and repeal such ordinances, by-laws, and regulations as it may deem advisable within said city for the following purposes: * * * To license hucksters, peddlers, * * * in the business of hawking and peddling, and to regulate and license the sale of [by] peddling (directly or by canvassing for subscription) of goods, wares, merchandise, refreshments, or any kind of property or thing, by persons going about from place to place in the city for that purpose, or from any stand, cart, vehicle, or other device in the streets, highways, or in and upon the wharves, open places or spaces, stores, offices, and business blocks and places, public grounds or buildings in said city." Act No. 469, Local Acts 1895, tit. 7, § 24.

The objections presented to the validity of this ordinance, as stated by counsel, are:

" 1. The common council has no authority to license the soliciting of orders for future delivery of goods, wares, and merchandise, or the subsequent delivery of goods, etc., so ordered.

"2. The license fee fixed by the ordinance for spices, teas, coffees, baking powders, flavoring extracts and essences is excessive, unjust, oppressive, and in restraint of trade.    It amounts to a tax, and not a license fee.

"3. The ordinance as a whole is unreasonable, and not uniform.

"4. The license fees as fixed by the ordinance discriminate between trades and between the same general class of goods, and is void for such discrimination.

"5. As applied to the case at bar, the ordinance, even if valid, is inoperative, being in restraint of interstate commerce."

Counsel cites a great many cases in support of these objections. It must be conceded that the authorities are not uniform, but the questions involved are not new in this State. The validity of an ordinance much like this is sustained in *People* v. *Sawyer,* 106 Mich. 428 (64 N. W. 333), and the cases therein cited. The following Michigan cases are also in point: *City of Grand Rapids* v. *Braudy,* 105 Mich. 670 (64 N. W. 29, 32 L. R. A. 116, 55 Am. St. Rep. 472); *City of Grand Rapids* v. *Norman,* 110 Mich. 544 (68 N. W. 269); *People* v. *Baker,* 115 Mich. 199 (73 N. W. 115); *People* v. *Hotchkiss,* 118 Mich. 59 (76 N. W. 142); *People* v. *Blom,* 120 Mich. 45 (78 N. W. 1015); *Spanish Fork City* v. *Mortensen,* 7 Utah, 33 (24 Pac. 620). See, also, *Saulsbury* v. *State,* 43 Tex. Cr. Rep, 90 (63 S. W. 568), for an instructive discussion.

Counsel says this court has held such an ordinance invalid, as in contravention of interstate commerce; citing *People* v. *Bunker,* 128 Mich. 160 (87 N. W. 90). We think the cases quite unlike. In the case cited, Mr. Bunker solicited orders for knives, which orders he forwarded to his employer in another State, and the employer made the delivery to the customer. In the case at bar the orders were taken by respondent. They were not sent out of the State, and they were not in fact filled by any one except the respondent. The house at Grand Rapids did not know what customers respondent had, or their names. The respondent ordered sufficient goods to fill his orders, and then filled them himself. This would also differentiate

the case from the ordinary drummer or traveling man who takes orders and forwards them to the firm or employer he represents, and the employer causes the goods to be delivered to the customer.

The verdict is affirmed, and the case will be remanded for sentence.

The other Justices concurred.