CITY OF MUSKEGON v. HANES.

1. HAWKERS AND PEDDLERS—WHAT CONSTITUTES PEDDLING.
   An ordinance prohibiting hawking and peddling without a license is violated by going without a license from door to door and leaving articles on approval to be returned or paid for at a later date to another servant of the owner.

2. SAME—INTERSTATE COMMERCE.
   There is no interference with interstate commerce in requiring a license of one who distributes articles of merchandise, shipped here in bulk from another State, to be returned or paid for at a later date to an associate of the distributor.

Error to Muskegon; Sessions, J. Submitted June 12, 1907. (Docket No. 86.) Decided September 20, 1907.

Mary A. Hanes was convicted of peddling without a license, and sentenced to pay a fine of $50 or in default thereof to 30 days' imprisonment in the county jail. Affirmed.

*Cross, Lovelace & Ross*, for appellant.

*James E. Sullivan*, for appellee.

CARPENTER, J. We adopt the opinion of the learned trial judge—Judge Sessions—rendered in disposing of this case in the circuit court. That opinion reads as follows:

"By stipulation in open court a jury was waived by the defendant and the case submitted to the court for determination.

"The facts in this case are undisputed. It appears from the evidence that the Raydith Manufacturing Company on the first day of last July was a corporation organized under the laws of the State of Illinois, and manufacturing perfumes in the city of Chicago in that State; that the defendant was in the employ of that corporation and

was working for it in the city of Muskegon on that date; that prior to coming to the city of Muskegon, and on or about the 18th or 20th day of June, the defendant was working in Grand Rapids in this State, and that from June 18th or 20th until the first day of July, and perhaps a day or two thereafter, she, together with others, associated with her and under direction, was working for this Illinois corporation in this city. When the defendant came to the city of Muskegon she brought with her the goods which she was distributing, or a portion of them; she brought with her a sufficient stock to enable her to do business for a time, and whenever the stock needed replenishing she had the goods shipped from this corporation in the city of Chicago to her in the city of Muskegon, either by express or by freight; that before any goods were distributed by her or her associates such goods had been shipped to the city of Muskegon and were within this State. It appears also that the defendant had her expenses paid by the Raydith Manufacturing Company, and in addition thereto she was paid by that corporation a commission upon all of the goods that were sold or disposed of by herself or her associates. There came with her to the city of Muskegon two others, whom she terms canvassers, and the method of their operation was for the defendant and the two canvassers, who were acting under her direction and orders, to go about the city of Muskegon from house to house and leave packages of perfumery, the packages or cases containing ten small bottles of perfumery, preferably these packages of perfumery were left at houses where there were children, the defendant or one of the canvassers under her direction informed the householder at the time of leaving the package of perfumery that the price would be so much, that the householder or the children could either retain the perfumery or dispose of it to others, and in case it was sold or retained, that a premium would be paid or given for the sales in proportion to the number of bottles that were sold; in case ten bottles were sold the premium was to be three bottles of the perfumery; in case seven bottles were sold it was to be two. The householder was also informed at the same time that another person, termed as a collector, would be at the house within a certain length of time to collect the bottles of perfumery that had not been sold or retained, and to collect the pay for the perfumery which had been sold or retained.

"In this city a canvass was made of certain parts of the city by the defendant and the two canvassers under her, and in about ten days the collector went the rounds and made the collections. In this particular instance the collector was the daughter of the defendant, and while here roomed with the defendant and paid the expenses of the room. The defendant claims that she did not receive any of the money collected for the perfumery sold; that her expense account was made up and sent to the Manufacturing Company in Chicago; that the moneys collected were remitted direct to the Manufacturing Company in Chicago; that she had nothing to do with that; that the collector was not under her direction or orders.

"It appears in the evidence that sales were actually made in the manner that I have described here in the city of Muskegon and collections made; that the defendant participated in the distribution of the goods and was a member of the crew, as she termed it, that were canvassing.

"No attack is made upon the validity of the ordinance in question, either as to its reasonableness or as to the authority of the council of the city of Muskegon to adopt such an ordinance, or as to the regularity of the proceedings in adopting the ordinance, or as to the right of the city to enforce the provisions of this ordinance in a proper case.

"Counsel for defendant contends, *first*, that under the facts in this case, the defendant has not violated any provision of the ordinance in question, in that she made and consummated no sales herself and collected none of the money; and, *second*, that as applied to the facts in the case, the ordinance is inoperative, being in restraint to interstate commerce.

"I am unable to agree with counsel for defendant as to the first contention. The ordinance itself provides by section 1 that no person or persons shall engage in the business of hawking or other peddling in the streets or other public places or from door to door, or in selling any article of trade or commerce whatsoever on any public street, park ground, alleys or places in the city of Muskegon, without first having obtained a license therefor.

"It appears in the evidence that no license was obtained by the defendant and that whatever she did she did without first having obtained a license.

"By section 4 of the ordinance, it is provided that the

amount to be paid for the license provided for in this ordinance shall be as follows:  For drugs, toilet articles, perfumes, cosmetics and toys, one dollar for one day, and three dollars for one week.

"Section 6 of the ordinance defines the term hawker or peddler and designates the persons who shall be deemed hawkers and peddlers under the provision of this ordinance.  It is as follows:

"'Any person or persons who shall go about from house to house or place to place and sell or offer to sell any articles of trade or commerce to be delivered then or in the future, shall be deemed a hawker and peddler within the meaning of this ordinance.'

"I do not think that it is necessary to constitute a violation of the provisions of this ordinance that there should be an actual sale of the goods.  It is sufficient, in my judgment, if there is an offer to sell, and a going about from house to house or place to place within the city of Muskegon, offering to sell goods [*People* v. *Sawyer,* 106 Mich. 428], and the conclusion is inevitable that the actions of the defendant and her associates of those under her, the canvassers, in going about and distributing these bottles of perfumery, with the instructions given to the householder at the time of such distribution, constituted an offer to sell the goods.  The parties to whom the goods were delivered were each and every one offered the opportunity of purchasing the goods, and the purpose of the entire transaction was to sell the perfumery.

"I am also unable to agree with counsel for defendant upon the second contention.  It appears conclusively that the goods were first shipped to the defendant in the State of Michigan before they were even distributed.  This is not a case where a canvasser doing business for a foreign corporation or a nonresident of this State goes about taking orders, the orders to be filled by the manufacturer and delivered to the customer or delivered and shipped to the agent to be delivered to the customer, as was the case in *People* v. *Bunker,* 128 Mich. 160, where our Supreme Court followed the decision of the United States Supreme Court in *Brennan* v. *City of Titusville,* 153 U. S. 289.  Because in this case, as I have stated, the goods were already within the State before they were offered for sale.

"It seems to me that this case falls squarely within the decision of our court in the case of the *City of Muskegon* v. *Zeeryp,* 134 Mich. 181.  I am unable to distinguish

this case from that one in principle, and in that case our Supreme Court expressly distinguished the case of the *People* v. *Bunker* and the United States court case followed by our Supreme Court. I might say that upon the other branch in addition to what I have said that even if the defendant could not be convicted upon a mere offer of sale, in my judgment, all of the parties, the canvassers, the collectors and the defendant, were engaged in one transaction, they were participants in the one transaction, the one party offering the goods for sale, the other collecting the money; and, in my judgment, each of the participants in that transaction was a seller of the goods.

" The defendant therefore will be adjudged guilty."

The judgment is affirmed.

McALVAY, C. J., and GRANT, HOOKER, and MOORE, JJ., concurred.