ALLPORT v. MURPHY.

1. MANDAMUS—RETURN—CONCLUSIVENESS.
  Where a mandamus case is heard on the petition and answer to the order to show cause, averments of the answer must be assumed to be true.

2. HAWKERS AND PEDDLERS—MEANING OF TERMS—WHO ARE INCLUDED.
  The popular meaning of the words "hawker" and "peddler," and the meaning indicated by the derivation of the words, involves ideas both of the carrying of goods for sale and of an itinerant vender.

3. SAME — ORDINANCES — LEGAL TERMS — VALIDITY — MUSKEGON CHARTER.
  The charter of Muskegon empowers the common council "to license hucksters, peddlers * * * in the business of hawk_ing and peddling, and to regulate the sale by peddling (directly or by canvassing for subscription) of goods, wares, merchandise * * * by persons going about from place to place in the city for that purpose." (Act 469, Local Acts 1895, title 7, § 24, subd. 8.)   An ordinance of the city provided: "Any person or persons who shall go about from house to house or place to place and sell or offer to sell any article of trade or commerce to be delivered then or in the future shall be deemed a hawker and peddler within the meaning of this ordinance."   A warrant for the arrest of one charged with going about from place to place in the city taking orders for teas, coffees and baking powders, etc., from persons who were not dealers in these commodities, was refused upon the ground that such person was a citizen merchant who solicited orders and filled the same from goods kept in his store, and that such method of conducting his business did not make him a hawker and peddler under the general statutes, the charter or the ordinance. *Held,* that the common council did not attempt to prescribe by the ordinance a new definition for the legal terms "hawker" and "peddler," but the ordinance was only an exercise of its charter power, and, applying alike to all persons, was valid.

Certiorari  to  Muskegon;  Sessions,  J.    Submitted

June 2, 1908.   (Calendar No. 22,782.)   Decided July 1, 1908.

Mandamus by John C. Allport to compel Patrick Murphy, a justice of the peace, to issue a warrant for the violation of an ordinance.   There was an order denying the writ, and relator brings certiorari.   Reversed, and writ granted.

*James E. Sullivan*, for relator.

*Cross, Lovelace & Ross*, for respondent.

The respondent, justice of the peace and police justice of the city of Muskegon, refused to issue a warrant upon the complaint of relator, charging one Archibald Bryant with violation of an ordinance entitled: "An ordinance relative to hucksters, peddlers, hawkers and street venders." Relator is license collector for the city and respondent the only judicial officer of the city not disqualified to hear the matter. An order to show cause why he should not receive the complaint and issue a warrant was made by the circuit court for Muskegon county; cause was shown, and, upon a hearing upon the petition and return, a writ of mandamus was refused.

Section 1 of the ordinance reads:

" No person or persons shall engage in the business of hawking, pack or other peddling in the streets or other public places or from door to door, or in selling any article of trade or commerce whatsoever from a stand, stall, cart, wagon, pack, basket, or in any manner on any public street, parks, grounds, alleys, or places in the city of Muskegon, without first having obtained license therefor."

After setting out the method of obtaining a license, it is provided in section 6:

"Any person or persons who shall go about from house to house or place to place and sell or offer to sell any article of trade or commerce to be delivered then or in the future shall be deemed a hawker and peddler within the meaning of this ordinance."

The penalty for violation of the ordinance is a fine and costs, and, in default of payment of such fine, imprisonment in the county jail, and there may be imposed a sentence of both fine and imprisonment. The complaint filed with the magistrate set out that the said Bryant was a resident and taxpayer of the city of Muskegon and owner of a small store on Washington avenue in that city, where he kept teas, coffees, and baking powders for sale in the usual course of trade; that the wife of said Bryant or someone else had charge of the store during his absence; that the store had been established since May 1, 1907. It is alleged in the complaint that for a period of three months next after July 5, 1907, the said Archibald Bryant—

" Did go from door to door and from house to house in said city of Muskegon taking orders for teas, coffees, and baking powders, in small quantities, to wit: for two pounds, one pound, and half pound quantities, from persons who were not dealers in such teas, coffees or baking powders. That the said teas, coffees, and baking powders were not delivered at the times in which the orders were taken but were afterwards put up by the said Archibald Bryant or under his direction from his stock of trade in the store aforesaid in the quantities so ordered by the different persons aforesaid, and thereafter delivered * * * to the persons so ordering them at their residences. * * * That the said Archibald Bryant did not confine his business as aforesaid to old customers but went from house to house and door to door in said city during the time aforesaid serving old customers and getting new customers. * * * That the said teas, coffees, and baking powders, in packages as ordered, were carried in a wagon and delivered to the persons that had ordered the same, by the said Archibald Bryant."

It is set out that this was the principal business of the said Bryant, in which his time was principally employed, and that he had not obtained a license and had not paid the fee necessary to obtain a license, and that he was engaged in the business of peddling teas, coffees, and baking powders without first having obtained a license therefor. In the answer to the order to show cause, respond-

ent set out various reasons for his refusal to issue the warrant. He averred that the complaint stated no offense because it was not a violation of the ordinance for a citizen and taxpayer to solicit orders and fill the same from goods kept in his store in the manner mentioned in the complaint, and that such a method of conducting his business did not make him a hawker or peddler under the laws of the State, the charter, or the ordinance; that the said Bryant not only sold at retail in his store teas, coffees, and baking powders, but also, and in the usual and customary manner of retail merchants, he kept and sold bottled mustard, cocoa, all kinds of spices and extracts, starch, tapioca, soda, rice, canned goods, breakfast foods, oatmeal, soaps, bluing, ammonia, crockery, tin and glassware, furniture, rugs, curtains, baked goods and candies, and that the taking of orders for and the delivery of goods sold in the manner set out in the complaint was a mere incident to the conduct of the retail store business.

He further set up that at the January, 1908, term of the circuit court for the county of Muskegon, the said Archibald Bryant was acquitted of a similar charge upon a similar state of facts except that the time during which it was charged he violated the ordinance was a time preceding instead of subsequent to the 5th day of July, 1907; the court directing a verdict in favor of said Bryant upon the ground that he was not a hawker or peddler in fact or within the meaning of said ordinance. Respondent also asserts that if the ordinance requires the said Bryant to obtain a license as a hawker and peddler, it is invalid because in conflict with, and in violation of, section 32, article 6, of the Constitution of this State, and in conflict with, and in violation of, section 1 of the 14th Amendment of the Constitution of the United States.

OSTRANDER, J. (*after stating the facts*). I do not find in the record support for the claim that the warrant was refused and the case presented by collusion of the justice and the city attorney or that the person sought to

be charged in the warrant which was applied for could, or would, if greater privileges had been extended to him, have presented in the return to the order to show cause any other or different reasons for refusing the warrant. There is precise precedent for the practice pursued, in *Chaddock* v. *Day*, 75 Mich. 527 (4 L. R. A. 809). Counsel seem to agree that the question is presented whether Archibald Bryant is a hawker and peddler within the meaning of the ordinance. It is averred in the answer to the order to show cause, and must be assumed to be true, that the conduct complained about was incident to the general retail business carried on by Bryant at his store.

The charter of the city empowers the common council to enact ordinances, etc.,—

" To license hucksters, peddlers   *   *   *   in the business of hawking and peddling, and to regulate and license the sale by peddling ( directly or by canvassing for subscription ) of goods, wares, merchandise, refreshments or any kind of property or thing, by persons going about from place to place in the city for that purpose, or from any stand, cart, vehicle or other device in the streets,   *   *   *   open places or spaces, stores, offices and business blocks and places, public grounds or buildings in said city." Act No. 469, Local Acts 1895, tit. 7, § 24, subd. 8.

The popular meaning of the words hawker and peddler and, perhaps, the meaning indicated by the derivation of the words, involves ideas both of the carrying of goods for sale and of an itinerant vender. Expressions of this conception of the meaning of the words are found in legislation and in judicial utterance. See 2 Rawle's Bouvier, p. 642; *Com.* v. *Ober*, 12 Cush. ( Mass.) 493; *Village of Stamford* v. *Fisher*, 140 N. Y. 187; *Emmons* v. *City of Lewiston*, 132 Ill. 380 (8 L. R. A. 328); *Rex* v. *McKnight*, 10 B. & C. 734; *State* v. *Hogdon*, 41 Vt. 139; *City of Chicago* v. *Bartee*, 100 Ill. 57; *People* v. *Baker*, 115 Mich. 199.

Our own statute, after describing those who must obtain a license (2 Comp. Laws, section 5324) excepts certain persons whose acts may bring them within the class

(section 5330), and the excepted class has been recently enlarged (Act No. 120, Public Acts 1905; Act No. 225, Public Acts 1907). Whatever meaning may have been given to the words, anciently or in later times, it will be observed that the charter powers above recited extend to licensing and regulating the sale of any kind of property by persons going about from place to place in the city for that purpose. It may be admitted that the common council of Muskegon has not the power to prescribe new definitions for terms which already have legal definitions. It has not attempted to do so. It has, for the purpose of the exercise of a power to regulate sales made from house to house, provided (section 6):

"Any person or persons who shall go about from house to house or place to place and sell or offer to sell any article of trade or commerce to be delivered then or in the future shall be deemed to be a hawker and peddler within the meaning of this ordinance," which is entitled, generally, as is above stated.

It is inaccurate, therefore, to say that the case turns upon the question of who is a huckster, or hawker, or peddler, as the words have been judicially defined, and decisions which rest upon a judicial construction of statutes or of ordinances in which the words are employed without qualification are not necessarily controlling or helpful.

The particular ordinance has been considered by this court in two cases,—*City of Muskegon* v. *Zeeryp,* 134 Mich. 181; *City of Muskegon* v. *Hanes,* 149 Mich. 460, —in the first of which it was held that the charter powers were sufficient to sustain this section of the ordinance and in both that it was violated by acts similar in character to those stated in the complaint in this case. See, also, *City of Alma* v. *Clow,* 146 Mich. 443. If these cases are not decisive of the case at bar, it is because the person who is here sought to be charged with a violation of the ordinance is a local, retail merchant, who keeps a store and who also does what the ordinance, in terms, prohibits. If section 6 of the ordinance does not apply to resident

storekeepers, it is invalid upon the authority of *City of Saginaw* v. *Saginaw Circuit Judge,* 106 Mich. 32; *Brooks* v. *Mangan,* 86 Mich. 576. See *James* v. *Sweet,* 125 Mich. 132, 137; *Chaddock* v. *Day,* 75 Mich. 527 (4 L. R. A. 809). In terms it applies to residents and nonresidents alike, to storekeepers and those not storekeepers. The right of the city to exercise the power with respect to others than resident merchants is not denied. It is not claimed that the fee exacted is unreasonable. The constitutional questions raised by the return to the order to show cause are not argued in the brief. To sustain the order of the court below, we must read into the section the words, or their equivalent in meaning, "except resident merchants who have an established place of business." Aside from rendering the section invalid, such an interpolation of words would be, in my opinion, bald judicial legislation.

The determination of the court below is reversed, with direction to grant the writ of mandamus. No costs are awarded.

HOOKER, MOORE, CARPENTER, and McALVAY, JJ., concurred.