## City of Newport v. French Bros. Bauer Company.

(Decided March 15, 1916.)

## Appeal from Campbell Circuit Court.

1. Pleading—License Tax Upon Occupation.—A petition seeking to recover a license tax upon an occupation, which has been paid to the municipality, upon the ground that it was illegally collected, does not state a cause of action, when it fails to allege that there was no ordinance of the city requiring the payment of such license tax, when the petition shows that such city had authority to levy such a tax, and the plaintiff engaged in such business in the city.

2. Licenses—Tax Upon Occupations and Privileges—Municipal Corporations.—Under the authority granted by the legislature to a municipality of the second class to impose license taxes upon occupations, trades and professions, it may designate a class for taxation, as the persons of a certain occupation, and then all the persons who engage in that occupation must be taxed, but the persons of the occupation may be separated into classes, upon a reasonable and fair basis, and a different license fee imposed upon each class.

3. Licenses—Tax Upon Occupations and Privileges—Ordinances.— An ordinance which levies a license tax upon all venders of milk, except the ones who sell in grocery stores, is not invalid, as not being a uniform tax upon every one engaged in the business, where the grocer is required to pay a license upon all of his business, which includes that of selling milk in his store.

4. Municipal Corporations—Ordinances.—One who seeks to have an ordinance of a city declared invalid as to him must affirmatively show that the ordinance is discriminatory and unfair or oppressive, as applied to him.

5. Licenses—Hawkers and Peddlers.—A citizen of another state, who brings into this state goods from another state, and sells and delivers them as a peddler does, is liable to the same license tax as a peddler, as a citizen of this state who engages in peddling.

6. Licenses—Hawkers and Peddlers—Police Power.—The requirement of a license for engaging in peddling is an exercise of the police power of the state, and is not a restraint or regulation of interstate commerce, unless there is some discrimination made in favor of the citizens of one state against those of another, or a discrimination made against the goods of another state.

7. Licenses—Hawkers and Peddlers.—When sales of goods are made to retail merchants for sale it does not constitute peddling.

8. Licenses—Hawkers and Peddlers.—In order to constitute a person a peddler, he must not only be an itinerant person, but a considerable part of his occupation must consist of selling the prohibited article.

9. Licenses—Delivery of Goods by Merchant—Peddlers.—A merchant who has a fixed place of business is not a peddler, because he de-

livers goods to his customers, to whom they have been previously contracted, or because he delivers goods to regular customers, who have with him standing orders to buy from and receive from him, at regular intervals, so much of his goods as they may desire; nor because once in a great while a driver of a wagon for him, engaged in delivering goods for him, sells an article upon the road to some person, in the nature of a sample, to a person who requests the sale to him.

10. Licenses—Peddlers—When Sales and Deliveries by Driver Constitute Peddling.—Sales and deliveries of goods made by the drivers of wagons for a merchant in Ohio, to persons in Newport, Ky., who had made no previous order for the goods, and who were not regular customers, with whom there was no general arrangement in the nature of a standing order to receive a certain quantity of the goods upon the regular visits of the wagons, is peddling, although the sales and deliveries may have been made at the same time the wagons made visits to deliver goods previously ordered.

11. Municipal Corporations—License Upon Vehicles.—A municipality has authority, under the general police powers of the state, to levy a license tax upon vehicles, which ply its streets.

12. Municipal Corporations—Ordinances—Licenses.—The fact that the ordinance which levies the vehicle license tax provides that the fees shall go to pay the expenses of the city, in the street repair fund, does not necessarily make the tax one for revenue, where the amount of the tax and the other requirements of the ordinance show it to be a police measure, rather than an ordinance primarily for revenue.

13. Commerce—Licenses—Interstate Commerce.—When goods are brought into a state and there exposed for sale, without any previous contracts or negotiations by the citizens of the state to which they are brought, for their purchase, while in another state, and are sold and delivered to the purchasers, in the state to which they are brought, it is a business conducted entirely in the latter state, and a license tax upon the business of one who engages in such business wholly within the latter state is not a regulation of interstate commerce.

OTTO WOLFF for appellant.

H. B. MACKOY and MACKOY & MACKOY for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, City of Newport, which is a municipal corporation of the second class, in 1896 adopted an ordinance, which was amended in 1897, and which as amended was in force in 1910 and 1911. The ordinance referred to prohibited any person, corporation or company carrying on any trade, business or profession, within the city, without first having obtained a license

therefor, as provided by the ordinance. By one section of the ordinance a license tax of ten dollars, per annum, was imposed upon any one doing business as a huckster, where the business was pursued upon foot, and twenty dollars, per annum, when the business was carried on with a wagon; the license entitled the holder to the use of but one wagon, and the wagon to be accompanied by not more than two persons. By another section of the ordinance a license tax of ten dollars, per annum, was imposed upon any one doing business as a peddler in the city, if the business was pursued upon foot, and twenty dollars, per annum, if carried on with a wagon, but the license only entitled the holder to the use of one wagon, and to be accompanied by not more than two persons. The license taxes imposed by the ordinance were to be used for the purpose of paying the expenses of maintaining the government of the city.

There was in force another ordinance of the city, in 1910 and 1911, which imposed an annual license tax of ten dollars upon each person, corporation or company engaged in the business of vending milk, whether carried on with a wagon or in a depot. The taxes so imposed were set apart and appropriated to the police fund of the city.

In 1912 the city adopted an ordinance, by the terms of which a license tax of ten dollars, per annum, was imposed upon any one vending milk from a store or depot, except a grocery store, and fifteen dollars, per annum, upon the business of vending milk from a wagon, and where more than one wagon was used in the business by anyone holding a license, the additional wagon or wagons were required to pay a vehicle license tax. By the same ordinance a license tax of ten dollars, per annum, was imposed upon anyone doing business as a peddler, if the business was conducted upon foot, but if the business was carried on with a wagon, the tax imposed was twenty-five dollars, per annum, but a license only authorized the holder to use one wagon, to be accompanied by not exceeding two persons. These taxes were set apart by the ordinance to the payment of the expenses of the city government. All ordinances and parts of ordinances theretofore enacted, and which related to the subjects dealt with by this ordinance were repealed.

During the years 1910, 1911, 1912, and 1913, an ordinance was in force, the style of which was as follows:

"An ordinance providing for the classification and licensing of vehicles plying the streets of the city of Newport, Kentucky, and prescribing a penalty for the violation of said ordinance." This ordinance required all persons, corporations and companies using any vehicles on the streets of the city to procure a license for same. Two of the classifications made of vehicles were, a wagon with springs, drawn by one horse, and a wagon with springs drawn by two horses. The annual license tax upon the vehicle drawn by one horse was $3.00, and upon the two-horse wagon, the sum of five dollars. The person holding such a license was required to place a plate on the side of the vehicle which was licensed, which should designate the kind of license. It was made the duty of the police officers to enforce the provisions of the ordinance, and the license fees were to be used for the payment of the expenses of the city government and were set apart to the street repair fund of the city.

Under all of the above named ordinances, the police officers were authorized to demand a production of the license by any person holding same.

Under these ordinances the appellee obtained the following licenses and paid the following license taxes:

| | | |
|---|---|---:|
| 1910. | May 26, Milk vender's license | $10.00 |
| 1910. | May 26, butter business license | 20.00 |
| 1911. | May 12, Milk vender's license | 10.00 |
| 1911. | Feb. —, Peddler's license | 20.00 |
| 1912. | May 14, Milk vender's license | 15.00 |
| 1912. | May 14, Peddler's license | 25.00 |
| 1913. | May 14, Milk vender's license | 15.00 |
| 1913. | May 13, Peddler's license | 25.00 |
| 1911. | Feb. —, Two 2-horse vehicles | 10.00 |
| 1911. | Feb. —, Nine 1-horse vehicles | 27.00 |
| 1911. | May 22, one 1-horse vehicle | 3.00 |
| 1912. | Feb. 2, two 2-horse vehicles | 10.00 |
| 1912. | Feb. 2, Ten 1-horse vehicles | 30.00 |
| 1912. | June —, one 2-horse vehicle | 5.00 |
| 1913. | Feb. 6, Three 2-horse vehicles | 15.00 |
| 1913. | Feb. 6, Ten 1-horse vehicles | 30.00 |

The appellee, alleging that it was a corporation, organized and existing under the laws of the State of Ohio, and engaged in producing, selling and delivering bakery goods, butter, eggs, milk, cream and ice cream, brought this suit, by which it sought to recover of appellant the

license taxes paid to it, and to enjoin the city from further collecting such taxes from it, and from interfering with it in the conduct of its business, by enforcing the penal features of the ordinances against it, because of its failure to pay the license taxes imposed. The petition alleged, in substance, that appellee maintained store houses in the city of Cincinnati, Ohio, and transacted a portion of its business in the appellant city; that it delivered bakery goods, butter, eggs, milk, cream and ice cream, or such part of same as were sold to persons in Newport, Kentucky, upon contracts of sale therefor, which contracts were made by orders received at its store houses in Cincinnati, Ohio, and these orders were received in the last mentioned city through solicitors, drummers and drivers for appellee, or by letter or telephone from persons in Newport; that at the time the orders were received the goods were situated in Ohio, and subsequently, in the performance of the contracts, the goods, or such part of them as had been sold under the contracts, were carried in their vehicles and delivered to the persons who ordered them in Newport; that, with the exceptions thereafter mentioned, the persons to whom the goods were delivered were regular customers; that their vehicles make daily visits to such persons for the purpose of soliciting sales by the drivers of the vehicles; that the larger number of the persons to whom the goods were sold and delivered in Newport were regular customers and retail dealers in such goods; that by general arrangement made through standing orders prior to or at the beginning of deliveries to some of the regular customers, it kept them supplied with goods, other than bakery goods, without any specific orders being made in advance of a visit to them by the vehicles; that at the times of their visits to them the drivers of the vehicles, in accordance with the general arrangement, delivered to them so much of the goods as they desired, but the products so delivered were of the same description as those called for in the standing orders, and were delivered upon the same credits as specified in the standing orders; that for the purpose of filling the standing orders, the vehicles carried a sufficiency of goods, other than bakery goods, but with the exception of such products, other than baker's goods, loaded on its vehicles for the purpose of filling the standing orders and in process of transportation, the appellee,

at no time, ever had any goods not sold previous to the time of delivery in Kentucky, and had never maintained any warehouse, store room, or other place of business in Kentucky; that, at no time, in Kentucky, had appellee ever solicited the sales of any goods, except as above mentioned, nor offered them for sale to the general public, nor carried them about for sale, except that once in a great while it sold a bundle or carton of butter or eggs or a bottle of milk or cream from one of its wagons, on the road, to some person who asked to purchase same, who was not a regular customer, and who signified that he would or might become a regular customer, if, the butter, eggs, milk or cream was sold to him and should prove satisfactory; that all of the goods, other than bakery goods, and excepting eggs, were packed by appellee at its store houses in Ohio, in separate and distinct packages, consisting of bottles, cans, cartons, bundles, as the form and nature of the particular product required, and according to the custom of appellee and those who constituted the trade in general and who deal in such products, and were then carried in appellee's vehicles and delivered in Kentucky, in the same form as that in which they were carried, the packages remaining intact and unbroken; that the license fees, above named, should not have been exacted from it, because it had never been a peddler nor a milk vender in Kentucky; and that the ordinance imposing the license tax upon milk venders is discriminatory and void; and that the license taxes required of it under the several ordinances are restraints and regulations of interstate commerce, and in contravention of Article I., Chapter 8, Paragraph 3, of the Federal Constitution; and that the taxes were collected by appellant and paid by it under a mutual mistake of both it and the city, to the effect that such taxes could be lawfully required of it, and the penal features of the ordinances could and would be enforced against it, upon its refusal to comply with the provisions of them.

The appellant interposed a general demurrer to each paragraph of the petition, which was overruled, and the city failing to plead further, a judgment was rendered in favor of appellee for the recovery of the amount of taxes paid by it, and perpetually enjoined the appellant and its officers from collecting the taxes from appellee or enforcing the provisions of the ordinances against it.

From the judgment, the appellant, city, has now appealed to this court.

The appellant having, by its demurrer, confessed the truth of the averments of the petition, it becomes necessary to determine whether the petition, conceding all the allegations therein to be true, states a cause of action against the appellant.

Four different license taxes are complained of, viz:

First: A license for dealing in butter.

Second: A license for vending milk.

Third: A license for peddling.

Fourth: A license for using vehicles upon the streets.

For the sake of convenience each of these license taxes and the averments of the petition in regard to them will be considered in their order.

The butter business license was required and paid on the 26th day of May, 1910. At that time there was in force in Newport an ordinance entitled, "An ordinance requiring persons, corporations or companies carrying on occupations, business and practicing their professions, in the city of Newport, Kentucky, to take out a license tax therefor, and prescribing a penalty for the failure of such persons, corporations or companies so to do." The first section of the ordinance provides that no person, corporation or company shall carry on any trade, business or profession, as hereinafter mentioned, within the city of Newport, without having a license therefor, as therein provided. The petition, however, only sets out the two sections of the ordinance which impose a license tax upon the business of a huckster and the business of a peddler, which are sub-sections 44 and 45, of section 8, of the ordinance, respectively. It omits to include the first forty-three sub-sections of section 8, and it does not appear whether there are other sub-sections of section 8 or not, after sub-section 45. It is not alleged that there was not an ordinance or section of the quoted ordinance which imposed a license tax of $20.00 upon anyone engaged in dealing in butter within the appellant city. Cities of the class of appellant are authorized to impose a license tax upon franchises, trades, occupations and professions carried on within its limits. Sections 181, 181a, Constitution; section 3058, sub-section 2, Ky. Stat. It cannot be presumed that the butter business license complained of was exacted and collected, when its imposition and collection was not authorized

by any ordinance, in the absence of an averment in the petition to that effect. The appellee having paid the tax, it must necessarily devolve upon it to show that it was illegally imposed and collected. As to what effect the contention that an ordinance imposing such a license tax upon the appellee as a butter dealer, in Newport, was a regulation of and restraint of interstate commerce, and was therefore invalid as to appellee, and whether or not it was engaged in a butter business in Newport will be considered at the same time the effect of the prohibition of the Federal Constitution against restraints upon interstate commerce has upon the ordinances imposing a tax upon milk venders and plying the streets with vehicles is considered.

The milk vender's licenses complained of were obtained by appellee and the tax paid on May 26th, 1910, $10.00; May 12th, 1911, $10.00; May 14th, 1912, $15.00; and May 14th, 1913, $15.00. A milk dealer is one of the occupations which, by section 3058, sub-section 2, Ky. Stat., the legislative department of a city of the second class is expressly authorized to impose such license tax upon. The tax upon a milk dealer, which appellee was required to pay for carrying on that occupation, in 1910 and 1911, was levied by virtue of an ordinance, which is as follows:

"That each and every persòn, corporation or company engaged in the business of vending milk in the city of Newport shall pay an annual license fee or tax of the sum of $10.00, when carried on with a wagon, and $10.00 when carried on in a depot."

In the case of Weyman v. City of Newport, 153 Ky., 487, this ordinance was attacked upon the ground that it discriminated in favor of the persons who sold milk, other than from wagons or in depots, and was not uniform as required by the constitution, but this court upheld the ordinance as valid, and as imposing the license tax upon all venders of milk, and that the word depot embraced any place from which milk was sold.

The license tax paid by appellee for carrying on its business as a milk dealer, in 1912 and 1913, was imposed under another ordinance, which was enacted in 1912, and was an ordinance imposing a license tax upon the various occupations, trades and professions pursued by the different citizens in Newport, and the section of which relative to the business of milk dealers was as follows:

"For venders of milk from a store or depot, except a grocery store, the sum of $10.00; from a wagon, the sum of $15.00, and when more than one wagon is used, the additional wagon or wagons shall pay vehicle license tax."·

This ordinance is attacked upon the grounds that it is contrary to sections 3 and 171, of the constitution, in that it exempts the persons selling milk in groceries from paying the license tax, which is imposed upon other milk dealers, and for that reason it is not uniform, and enforces a discrimination in favor of the dealers of milk in grocery stores.

The portions of the ordinance copied into the petition purport to impose a license tax upon each occupation, trade or profession carried on within the city, but the sections fixing the tax upon the various occupations, with the exception of milk venders from stores and depots, except grocery stores, and from wagons, are not set out in the petition, and the petition fails to allege that a license tax upon vending milk from a grocery store is not imposed. It is true, that under authority given to municipal councils to impose license taxes upon trades, occupations and professions a class may be designated for taxation and other classes not taxed, but when a class is designated for taxation, as all the persons of a certain trade or occupation, then all the persons who follow such trade or occupation must be taxed, and to that extent the taxation must be uniform, but the persons of the occupation may be separated into classes, upon a reasonable and fair basis, and a different license fee imposed upon each class. Weyman v. City of Newport, 153 Ky., 490; Hager v. Walker, 128 Ky., 1; Schuster v. City of Louisville, 124 Ky., 189; City of Louisville v. Sagalowski, 136 Ky., 324; City of Covington v. Dalheim, 126 Ky., 26. License taxes have been held to be valid when the same license fee is exacted from each person engaged in a certain occupation. A uniform tax, in the nature of a license tax levied upon each person engaged in a certain occupation, in accordance with the amount of business done by him, without any change in proportion to the increase of the business has been held to be valid. Again, the class designated for taxation has been divided into subclasses, according to the amount of business done, and a different tax levied upon each of the sub-classes, and this method of levying a license tax has been held to be

valid. Gordon v. City of Louisville, 138 Ky., 442. Hence, if no license tax was levied upon the grocer who sells milk, it would be a discrimination in his favor, and the ordinance would be invalid; but, it is a matter of common knowledge that grocers sell in their stores all of the articles, of both food and drink, which go into the daily consumption of the people, and it would be utterly impracticable, as well as burdensome, to require a separate license for the sale of each article which he vends, and a payment of a separate license tax thereon. If a grocer, who sells milk in his store, should be required to pay a license tax upon his entire business as a grocer, which would include that of vending milk, as well as the other articles sold from his store, it could not be said that the ordinance under discussion makes a discrimination in his favor against the venders of milk from wagons, and from stores, other than grocery stores. Considered in connection with the section of the ordinance which provides that each person who engages in an occupation within the city must pay a license tax, although the part of the ordinance which is copied into the petition does not provide for the levying of a license tax upon a grocer, and the petition failing to allege that such an ordinance was not then in effect, it cannot be presumed that there was no such ordinance, and hence it cannot be said that the ordinance complained of is inherently violative of law, or of the well-settled principles that are generally recognized as limitations upon the enactment of ordinances by municipalities. Hence, the appellee must necessarily affirmatively show, that the facts are such, that as applied to him, that the ordinance is discriminatory and unfair or oppressive, and this the appellee has failed to do by any allegation of his petition. Wells v. Mt. Olivet, 126 Ky., 131.

The appellee obtained peddler's licenses as follows: 1911, Feb. —, $20.00; 1912, May 14th, $25.00; 1913, May 13th, $25.00. The averments of the petition, as to the manner of its business in Newport, and the demurrer having admitted the truth of them, were that it sold and delivered its goods in one of three ways. Its wagons were sent into Newport to deliver goods which had been contracted for while the goods were still in its store houses in Cincinnati, by persons in Newport, who directed the goods to be brought to them, by telephone or

by the mails, or through orders given in Newport for goods in Ohio, through solicitors, and the drivers of its wagons; or the goods were delivered to regular customers, the most of whom were retail dealers, without any specific order being given for them beforehand, but under a general arrangement between appellee and those regular customers, under standing orders, by which the goods were taken by the wagons, along with those which had already been ordered and a regular customer was supplied with such a quantity as he desired; or once in a great while a package was sold to some one on the road, who signified his purpose to become a customer, if the goods were such as suited him. The goods were never hawked about for sale to anyone who would buy. The statute, section 4216, Ky. Stat., describes a peddler as an itinerant person, and he is held to be such in contradistinction to a merchant who has a fixed place for the transaction of his business. A peddler goes from place to place, carrying his goods with him, and offering them for sale to anyone who will buy, and sells and delivers them to the purchaser. One, however, may be a peddler in a city, as well as elsewhere. The contention of appellee that the imposition of a license tax upon the business of a peddler, who is engaged in selling and delivering the products of another state, to be unauthorized, because it is a regulation of and restraint upon interstate commerce, is without merit. A citizen of another state, who brings goods from such state into this state, and sells and delivers them as a peddler does, is liable to the same license as a citizen of this state who engages in peddling.

The requirement of license for engaging in peddling and the imposition of the license tax is an exercise of the police power of the state, and is not a restraint or burden or tax upon interstate commerce, unless there is some discrimination made against one, because of his being a citizen of another state or because of the foreign origin of his goods. Rash v. Farley, 91 Ky., 344; Rash v. Hollaway, 82 Ky., 574; Emert v. Mo., 156 U. S., 319. The only question here is, whether appellee was a peddler within the meaning of the laws of this state. In Com. v. Standard Oil Co., 129 Ky., 744, it was said:

"The offense of peddling without a license is committed where goods are hawked about and offered and sold to any one who will buy; but the statute is not

intended to obstruct ordinary business, or to prevent the delivery of goods to a regular customer under a general arrangement, such as is regularly made with milkmen and the like.''

When sales are made to a retail merchant for resale, they do not constitute peddling. Standard Oil Co. v. Com., 107 Ky., 606. In Hays v. Com., 107 Ky., 655, it was held, that in order to constitute a person a peddler, he must not only be an itinerant person, but a considerable part of his occupation must be the vending or selling of the article mentioned in the prohibitory statutes. This was quoted with approval in the case of Standard Oil Co. v. Com., 26 R., 142. In Brenner v. Com., 9 R., 289, it was held, that a person who makes weekly or semi-weekly visits to his customers to solicit orders and delivers goods previously ordered is not a peddler within the meaning of the statute. Sales and deliveries of goods by the appellee's wagon drivers, in Newport, to persons who had made no previous order for the goods, and with whom there was no general arrangement, in the nature of a standing order to receive a certain quantity of the goods upon the regular visits of the wagons, was peddling, although the sales and deliveries may have been made at the same time the wagons made visits to deliver goods previously ordered. A sale of an article, once in a great while in the nature of the sale of a sample, would not constitute one a peddler, where it was not the purpose to sell the goods in that way as a material part of his business. Under the averments of the petition, however, the business, as conducted by appellee, lacked the essential elements of peddling, and he was not liable for the license tax required of peddlers.

The license tax imposed upon vehicles, and which appellee paid, was for the years 1911, 1912, and 1913. It insists that such tax was illegally imposed and collected, and that the ordinance which imposed it was void, because the wagons were all used by it in its own business and none of them were let for hire, and hence the tax was not upon a franchise, trade, occupation or profession, and the city, appellant, was not authorized to levy or collect such a tax. While it might be very well said, that the license fees upon vehicles used by the appellee in its business in Newport were really an occupation tax, and that the license fee required technically for carry-

ing on the business of a milk vender added to the license fees upon the vehicles used by it in the business constituted the entire occupation tax, and that the persons required to pay such taxes were thus classified in accordance with the number of vehicles used by them, and for this reason the appellant was authorized to levy and collect it as a revenue tax, in accordance with the principles announced in Wilson v. City of Lexington, 105 Ky., 765, and City of Covington v. Woods, 98 Ky., 344, the municipalities have undoubted authority to levy a license tax upon all vehicles, in the exercise of its police powers. Bowser & Co. v. Thompson, 103 Ky., 331; City of Henderson v. Lockett, et al., 157 Ky., 336. The license fee upon vehicles, where the tax is levied in the exercise of the police powers of the state or municipality, must only be sufficient to compensate the city for the issue of the license, the necessary keeping of the records of such transactions, and the supervisory regulation over the subjects of the license. The license fee required by appellant was $5.00 for a wagon drawn by two horses, and $3.00 for a wagon drawn by one horse, annually. It is not alleged, nor does it appear, that the license fee is unreasonable in amount for the police supervision provided for by it, nor more than was necessary for the purpose, considering the size of the municipality and the necessity for the police supervision. It is insisted, that because the ordinance provides that the license fees shall be for the payment of the expenses of the city government, in the repair of the streets, that it is necessarily a revenue tax. We do not concur in this contention, because the expenses of classifying, licensing, tagging and supervising the vehicles and their drivers must be borne by the city out of its funds for governmental purposes, and it is immaterial what it does with the fund arising from the licensing of vehicles, after it shall have been received by the city. Considering the amount of the license fees and other requirements of the ordinance, it indicates that it is a police regulation, and not a measure primarily for revenue.

It is insisted that all of the license taxes imposed by the ordinances upon appellee are illegal, and that no such taxes can be required of appellee by reason of such ordinances, because to do so would be to lay a restraint upon interstate commerce, as applied to the business of appellee. The butter business license and the milk

vender's license were taxes imposed upon the privilege of dealing in butter and selling milk, respectively, in Newport. They were not direct taxes upon either the butter or milk. These taxes were laid upon the business of all persons who engaged in either of the occupations in Newport, irrespective of where the persons resided who engaged in the occupations or whence the goods, which were sold, originally came. No discrimination is made by the ordinance in favor of the citizens or products of any state in favor of those of another. When the goods of appellee were brought into Newport and there exposed for sale, without any previous contracts or orders made for them by citizens of Newport, while the goods were in Ohio, and were contracted for, sold and delivered in Newport, it was a business conducted entirely in Kentucky. The fact that some of the goods handled by appellee had been contracted for by negotiations carried on for their sale while the goods were in Ohio, and thus protected them from state taxation in Kentucky, as being goods sold in interstate commerce, would not make the remainder of the business, which consisted of selling goods which were already in Kentucky before any negotiations for the sale were made, and the sale attended by the delivery of the goods, also, interstate commerce. A state is authorized to lay a tax upon any business which is carried on wholly within the state, as a tax upon an occupation, if such tax is not levied in such a way as to discriminate against the persons who are citizens of another state or the products of another state, and the laying of such a tax, without any discrimination, is not a regulation of or restraint upon interstate commerce, although it may incidentally affect it. Osborne v. Mobile, 16 Wall, 479; Woodruff v. Parham, 8 Wall, 123; Stockard v. Morgan, 105 Tenn., 412; Raquet v. Wade, 4 Ohio, 107; City of Newport v. Wagner, 168 Ky., 641, and cases there cited; Henison v. Lott, 8 Wall, 148; Welton v. Mo., 91 U. S., 275; Cook v. Penna., 97 U. S., 566; Machine Co. v. Gage, 100 U. S., 676; Webber v. Va., 103 U. S., 344; Brown v. Houston, 114 U. S., 622; Walling v. Michigan, 116 U. S. 446; Robbins v. Shelby Taxing Dis., 120 U. S., 489; Emert v. Mo., 156 U. S., 319; Com. v. Meyer, 90 Va., 809; Muskigon v. Hanes, 149 Mich., 460; People v. Smith, 147 Mich., 391; Muskigon v. ————, 134 Mich., 181.

The vehicle license tax was imposed upon all vehicles which plied the streets of the city. No discrimination was made against the citizens of any state or in favor of those of any state. It was a reasonable exercise of the police power of the state and municipality, and such exercise of the police powers of oversight and supervision are not restraints upon nor regulations of interstate commerce, and do not come within the inhibition of the Federal Constitution upon that subject. Barrett v. City of New York, 189 Fed. Rep., 268; Hendrick v. Md. U. S. Adv. Opinions, 5-140. The ordinance exempts one wagon from the payment of the vehicle tax, the license as a milk vender covering the use of that wagon upon the streets of the city.

Hence, the court below was in error in overruling the demurrer to the petition and adjudging a recovery of the sums paid for licenses upon the butter business, for the milk vender's licenses, and for the vehicle licenses, and enjoining the enforcement of the ordinance as to these licenses.

The judgment is therefore reversed, and the cause remanded for proceedings consistent with this opinion.