## Wagner, et al. v. City of Covington.

A. C. Gilligan, doing business under the name of the Eagle Bottling Works v. Same.

Cincinnati Soda Water & Ginger Ale Company v. Same.

(Decided October 26, 1917.)

### Appeals from Kenton Circuit Court (Common Law and Equity Division).

1. Licenses—Dealers in Soft Drinks—Application of State Regulations.—A wholesale manufacturer of soft drinks, in a foreign state, engaged in wholesaling his products in a city in this state, and who sends his goods into such city for sale by his agents in charge of vehicles with instructions to sell such goods to retail dealers, and to deliver the same if such dealers desire to and do purchase, must first comply with the ordinances of said city levying a license tax upon the business or occupation of wholesale dealers engaged in the sale of such soft drinks.

2. Commerce—Licenses—Subjects of Regulation.—Where the wholesale dealer has his manufactory and warehouse in a foreign state and loads his goods on to vehicles in charge of his agents, and sends them into this Commonwealth with instructions to find purchasers and to sell and deliver the goods in Kentucky, and the driver of the vehicles in pursuance to such instructions, comes into Kentucky, finds purchasers, sells and delivers goods without orders having previously been received by the manufacturer in the foreign state, such acts constitute intrastate commerce and not interstate commerce, and is subject to the taxing power of not only the Commonwealth, but of the municipality in which the goods are sold and delivered.

3. Commerce—Subjects of Regulation.—It is immaterial whether goods carried into this state from a foreign state for the purpose of sale by agents, without the manufacturer first having received orders from dealers in this state for such goods, were sold and delivered in the "original packages," because the transaction is not one in interstate commerce.

HARRY BRENT MACKOY and MACKOY & MACKOY for appellants.

FREDERICK W. SCHMITZ for appellee.

Opinion of the Court by Judge Sampson—Affirming.

The three foregoing styled causes were instituted in the Kenton circuit court to recover of the City of Covington certain sums paid as license tax to the city by the complainants, and seeking an injunction restraining the city and its officials from interfering with the complainants in the conduct of the business or arresting their drivers and agents while engaged in the city of Covington.

An agreed state of facts is filed and made a part of the record in each case. From this we learn that the appellants each have and conduct a bottling works in Cincinnati, state of Ohio, in and where they manufacture, bottle and pack various soft drinks which they market by wholesale; that some of their goods are sold in the city of Covington, state of Kentucky, but that appellants have no warehouse or other place of business in Covington, and that all sales were by wholesale and delivered in original packages. As Cincinnati and Covington are divided only by the Ohio river and the imaginary state line, the goods intended for sale in Covington are loaded on board vehicles in Cincinnati and carried across the river to Covington for delivery. Some of the goods are sold on orders received in Cincinnati from customers in Covington. These orders are sometimes transmitted by mail, and sometimes by telephone, and other times by agent. The appellants have been engaged in the wholesale bottling business for several years past, and have built up a business in the city of Covington, and have established a trade there among regular customers. Occasionally, however, a new customer is added, or a package of goods is sold to a prospective customer, or to some one applying for such package to the driver of the wagon after the goods have been carried into Kentucky. Most of the goods, however, are carried into Kentucky without an order from a customer.

The city of Covington, through its legislative body, passed an ordinance entitled "An ordinance fixing and imposing licenses upon certain occupations, professions, and trades, prescribing the manner of the issuing of said licenses, and apportioning the revenue realized therefrom," by which ordinance it is provided that manufacturers and wholesale dealers in soft drinks shall pay a license tax of one hundred fifty ($150.00) dollars for the privilege of carrying on their business in the city of Cov-

ington. Under this ordinance appellants have for several years back, under protest, paid said license tax of one hundred fifty ($150.00) dollars per year, and these actions were instituted to recover the sums thus paid and to restrain the city and its officials from requiring future payments, or interfering with appellants' agents, it being the contention that appellants are engaged in interstate commerce, and the transactions recited in the agreed state of facts constitute commerce between citizens of different states, and that the ordinance in question is a restraint upon and interference with such commerce, and, therefore, violative of article 1, chapter 8, paragraph 3, of the Federal Constitution. If the transactions referred to constitute interstate commerce, then it would follow that appellants were not subject to such licenses, and are entitled to the relief sought.

It is insisted that the goods which appellants sell in Kentucky have never up to the time of sale become identified with, part of, or commingled with the general mass of property in the state; but, being shipped, sold and delivered in original packages, must be regarded as being a part of interstate commerce until sold and delivered, and up to that time are not subject to state regulation or control. It is further asserted that the goods of appellant, being in interstate commerce, and having never acquired a situs, or come to rest in Kentucky, are not subject to a tax by the city of Covington either by way of an *ad valorem* or occupation license tax; and plaintiffs themselves being engaged in interstate commerce and being non-residents who have no office, warehouse or other place of business in said city, cannot be subject to either of said taxes.

By the agreed state of facts, it is shown that appellants, through their agents, load vehicles in Cincinnati, with the goods in question, and these goods are carried by such vehicles across the river into Kentucky without orders from such prospective purchasers first having been transmitted to appellants in Cincinnati. The drivers of the vehicles are solicitors and take and fill orders from these wagons. They drive up to the place of a customer and ascertain, by inquiry or otherwise, whether he desires to purchase goods; if he does, then a package, or packages, are delivered, according to his wishes and direction, at an agreed price. The whole negotiations are then and there conducted and concluded. It is wholly made in the city of Covington, and state of Kentucky.

In substance, this is what takes place: The driver asks the customer, "Do you want to buy my goods?" And the customer answers, "What is your price?" And the driver responds, giving the figures. The customer says, "I will take the goods; you may deliver the packages." Thereupon the driver unloads the goods and places them in the house of the customer. All these words may not be spoken, but the words and acts together amount to as much.

The ordinances are not assailed, but appellants contend that they being engaged in interstate commerce do not come within the purview thereof. In the case of the City of Newport v. Wagner, 168 Ky. 641, where the facts are almost identical with those under consideration in these cases, this court held:

"Contracts for the sale of goods made by a citizen of one state with a citizen of another, through the medium of the mails or by telephone, and which are delivered by the seller to the purchaser in "original packages" by means of vehicles, it seems would be protected from taxation by the authorities of the state to which they are transported, while in the "original packages," and in the hands of the seller. Goods delivered to a common carrier at a point without the state, consigned to a purchaser at his residence within the state, are exempt from state regulations, during the course of transportation. . . . A state has no power over goods shipped from one state to another for sale in interstate commerce, until the one receiving the goods has so acted upon them, that they have become incorporated and mixed with the mass of property in the state, which happens when the original package is no longer such in his hands. . . . In the case at bar some of the transactions were, without doubt, such transactions in interstate commerce as would not render the appellees liable for the license tax, which was imposed upon a wholesale dealer in Newport by the ordinance, but the transactions, when appellees, without having received any order for the shipment of goods from their place of business in Cincinnati, and without any contract for their delivery, brought the goods into Kentucky and into Newport, and there exposed them for sale, and sold and delivered them, these were transactions in Kentucky, the contract, sale and delivery. The mere fact that appellees contemplated that some one, who had previously purchased goods, would purchase the goods when they should be exposed for sale, in Newport,

could not be construed into a negotiation between citizens of different states, for the sale of goods then in one state to be delivered in another; neither was there any contract of sale of such goods, except in Kentucky. So far as the sales made in Kentucky were concerned, when made after the goods were brought into Newport, and without any previous negotiations for the purchase of the goods by the persons by whom they were purchased and to whom they were delivered in Newport, the appellees were simply doing business as wholesale dealers in soft drinks, wholly within the city of Newport, although the goods had their origin in Ohio."

To the same effect is the case of the City of Newport v. French Bros. Bauer Co., 169 Ky. 174. In that case a similar license ordinance was under consideration, the city of Newport having required French Bros. Bauer Co. to take out and pay for a license permitting them to carry on the business of selling milk, butter, and other supplies. In refusing the relief sought this court said:

"The butter business license and the milk venders' license were taxes imposed upon the privilege of dealing in butter and selling milk, respectively, in Newport. They were not direct taxes upon either the butter or milk. These taxes were laid upon the business of all persons who engaged in either of the occupations in Newport, irrespective of where the persons resided who engaged in the occupations whence the goods, which were sold, originally came. No discrimination is made by the ordinance in favor of the citizen or products of any state in favor of those of another. When the goods of appellee were brought into Newport and there exposed for sale, without any previous contract or orders made for them, by citizens of Newport, while the goods were in Ohio, and were contracted for, sold and delivered in Newport, it was a business conducted entirely in Kentucky. . . . A state is authorized to lay a tax upon any business which is carried on wholly within the state, as a tax upon an occupation, if such tax is not levied in such a way as to discriminate against the persons who are citizens of another state or the products of another state and the laying of such a tax, without any discrimination, is not a regulation of or restraint upon interstate commerce, although it may incidentally affect it."

All that was said in the case of the City of Newport against Wagner and in the case of the City of Newport against French Bros. Bauer Co., *supra,* is equally true

in the three cases under consideration. Every question raised upon these appeals was discussed and disposed of by this court in the opinions referred to.

The moment the driver halts his vehicle in front of a retail dealer's place of business for the purpose of negotiating a sale, and there exposes his goods for sale, the goods obtain a situs, and are subject to the laws and taxing power of the Commonwealth. It does not matter that the goods are sent into Kentucky with instructions to the drivers to return those not sold, if any part remains unsold, after visiting all of the former customers, to the factory in Ohio. Neither does it matter that a part of the goods make an entire circuit on some occasions. The test seems to be the passing of negotiations between the manufacturer in one state on the one hand, and the prospective purchaser in a different state on the other. If a dealer in Covington, Kentucky, should by telephone call up one of appellants in Cincinnati, Ohio, and say, "Please send me a case of your goods by your wagon today," there could be no doubt the transaction was one in interstate commerce, when the goods were delivered in the original package. But where without such order, or any order, and upon the mere expectation of finding a purchaser, goods are sent across the state line with the hope of finding a purchaser and delivering the goods, the acts which constitute the sale of the goods are entirely within Kentucky. No part of it takes place in the state of Ohio. The purpose of the provision of the Federal Constitution called the "Commerce Clause," and the acts of our congress thereunder, are not to give an advantage to a citizen of a foreign state over a resident in the matter of commerce, but to prevent the states from legislating against goods which are manufactured in a foreign state and from discriminating against the citizens of another state in its trading and commerce. In other words, it is intended that trade and commerce shall be free and untrammeled among the citizens of the several states.

There is no sanctity in the "original package" and no protection afforded it, unless such original package be moving in interstate commerce. After goods, which have their origin in a foreign state obtain a situs in this Commonwealth, they are subject to the law and the taxing power in the same manner as other property of like kind in the state, notwithstanding the imported goods may continue in the original packages. This, concisely, is the

position of appellants' original packages brought into the state and exposed and offered for sale.

The license tax charge against appellants is not unreasonable and it is not sought to declare the ordinance unconstitutional or void, except in so far as it affects appellants and interstate commerce. Since it does not place a restraint upon interstate commerce, and the transactions referred to in appellants' petitions do not amount to interstate commerce, the judgments of the lower court dismissing appellants' three actions must be sustained.

Judgment affirmed.